May it please the Court, my name is Steve Willey, and I represent Exploiters International of Washington, Inc. Would you keep your voice up, please? I want to discuss three topics this morning. One is Exploiters' declaratory judgment claim, which was dismissed by the District Court. This is the District Court's striking of Exploiters' and other claims, and the District Court's denial of Armando Contenya's motion for attorney's fees pursuant to RCW 4.28.855. First, I want to talk about the declaratory judgment claim. It's the most interesting and the most complicated. As set forth in Exploiters' second amended complaint, which is ER 789-799, Exploiters is a global freight forwarding company. It has employees both direct at the company based in Washington, and there are employees of affiliates and subsidiaries around the world. Exploiters provides all of its employees, whether they are directly employed by the Washington entity or employed by an affiliate subsidiary somewhere else, opportunities for compensation from Exploiters. That's in addition to the salary they receive from the direct employer. And that compensation is two forms, stock options and opportunities to purchase discounted stock under an employee stock purchase plan. This is for stock. Counsel, I'm sorry to interrupt, but let me ask you if the stock option agreement is part of compensation under Washington state law, are you entitled to withhold that on the front end? Well, it's an interesting question, Your Honor. I don't think it was raised below, but the question I think we're doing is when we had the dispute with Mr. Cadena, we came to court seeking declaratory judgment to resolve the issue. In other words, it wasn't simply unilaterally withheld. It was rather said, hey, let's bring this to the court and get the court's guidance as to whether the actions at issue violated the stock option agreement. Right, but you're not entitled to withhold compensation on the front end, then you lose your declaratory judgment suit, right? Well, Your Honor, I guess it would depend on whether or not you're talking about a Washington-based employee. It's not clear to me in the law that an employee outside of Washington can resort to the use of a Washington statute. So as a function of its employment. I'm sorry, I missed that last point. Explain what you just said. Yes. The question I think that the judge was raising was whether or not the Washington wage statutes apply with respect to any withholding of compensation. And my position as articulated was I don't believe that a non-Washington employee has access to claims under the Washington wage statutes. Those statutes are specific to Washington-based employees. And so what law should we be applying then? Well, the law under the stock option agreement is Washington law. There's no question of that. The question, I think, is whether or not a Washington statutory law applicable to Washington employees is also applicable. And I would say it's not, Your Honor. Okay, I get it. As a function of its employment with Exploiters Mexico, Mr. Cadena received stock options from exploiters here in Washington. ER 93 to 95 is an exemplar of one of those. Those option agreements are governed by Washington law, and they have a mandatory forum provision here in King County. In 2019, exploiters discovered that Mr. Cadena, along with several other employees, had been engaged in financial misconduct. His employment was terminated. Shortly thereafter, Mr. Cadena wrote to exploiters here in Seattle, seeking to exercise options. This is kind of a simple way of looking at the case, but we have a clear breach of employment obligation on the part of the employee, and he's now seeking to be paid under the contract under which he breached. Is that what's going on? Well, that's my view, Your Honor, yes. Okay. The question really, I think, is what duties, obligations, does Mr. Cadena owe to exploiters under the stock option agreements? That's the question. Exploiters' view is that Mr. Cadena has a foundational duty of loyalty in employment. This is a duty that's employed, excuse me, implied in all employment contracts in Washington, and there's no dispute about that. Now, to be clear, the stock option If we disagree with you and think that Washington law governs whether he's entitled to exercise the stock options or not, you're still without remedies, right? You could basically file a claim for breach of the duty of loyalty, whatever obligations under state law he has as an employee, a claim for damages, in other words. I suppose, well, I think you're correct. That is an alternative claim that could have been brought, Your Honor. I don't have any dispute about that. The stock option agreements are not employment agreements, but they are employment adjacent and employment dependent, right? The grant of the stock options is only a function of employment, and the function of the agreement itself is a function of continued employment. In other words, investing is what triggers, excuse me, employment is what triggers vesting, and if you leave employment, your vesting stops, and you have a very short window to exercise, or the options are extinguished. But assuming you lose on that, and we apply Washington law, which I suspect would say this is part of the compensation, so he's entitled to exercise that stock option, what are you left with? That goes to your other claims that you attempted to inject into the second amended complaint, right? I'm not sure I understand your question, Your Honor. Well, we're talking about the stock option. Yes. You said there were three issues, right? One is this right to exercise the stock option. The second issue being the district court striking the two claims that you tried to insert into the second amended complaint.  And I'm trying to move you on to that issue to see if you lose on the declaratory relief claim, what is left at this point? Got it. So if you're asking about the claims that were struck by the court, those were claims that were added with the second amended complaint. For which you did not seek leave to amend. You are correct, Your Honor. They are procedurally imperfect, no question. They were added. The difference is we believe those claims should be treated by the court as a motion to amend, and the court has, I think, the discretion and consistent with the policy under Rule 15, the ability to permit those claims. Importantly, those claims are based on the very same factual allegations. There's no difference in the allegations. And the case procedurally had never progressed to discovery. There's been no discovery. There's been no witness testimony. There's been nothing. And it would not be prejudicial to have those claims, which arise from the same nucleus of facts, part of the case. Now, I also recognize that the court has discretion on this, but I believe that consistent with Rule 15, the court should have made that amendment. And those claims get at other ways that one can look at the situation, which is did you breach the code of conduct, for example, which you assigned and were reviewed at the company? It was applicable to your employment, no question. Did you breach your duty of loyalty? I mean, those claims are articulated and are directly parallel or analogous to what the declaratory judgment claim would be. The question, I think, ultimately, at least with respect to the declaratory judgment issue, is whether or not Mr. Cadena owes a duty to expeditors that's related to his duty to his direct employer, Expeditors Mexico. And our view is that because the stock option agreement is an employment-related agreement, employment-dependent agreement providing compensation, that Mr. Cadena owes either a duty of loyalty or duty of honesty and probity to Expeditors Mexico derivatively to expeditors in the U.S., or it owes a duty of loyalty under Washington law to Expeditors Mexico because the stock option agreement is under Washington law. The district court disagreed. Mr. Cadena's view is that loyalty, honesty, probity are irrelevant and that the only consideration he must provide under the stock option agreement is continued employment. That's it. This is what he says in his principal brief at page 63. The options were not conditioned from refraining from conduct that might justify his termination under Mexican employment law, much less Cadena's compliance with duties recognized under Washington common law. In other words, Mr. Cadena's argument is it doesn't matter whether he's selling trade secrets out the back door or harassing employees or stealing money from his employer. So long as he isn't caught and terminated, he gets to vest and to exercise and receive compensation from expeditors. We would submit that should not, is not, should not be the law. And to be clear, we are not aware of any authority that is directly analogous to that context. In the order below, the district court relied upon Oracle Corp. v. Filotti and Scribner v. Worldcom. And those cases do both address stock options, but those cases are fundamentally good-faith, fair-dealing cases which address whether the company appropriately exercised discretion. Can I ask you a question? I mean, this is potentially related to the issues that we're tackling with here. But there's another lawsuit that was handled by the Washington district court, right?  Same judge? Yes. And the two claims that got dismissed as part of the second amended complaint, could you have litigated those claims in that interpleader lawsuit? I don't know the answer off the top of my head, Your Honor. You didn't attempt to? Well, we had no ability to do so. That's a separate issue. But we were not permitted to engage in discovery in that case. And the interpleaded amount was dispersed with a simple ruling by the court. There was no fact-finding at all. No opportunity to intervene, file a cross-complaint or anything like that? I think procedurally that's possible. The way in which it was framed up. That case is going to be appealed? Yes. Did I answer your question? Yes, thank you. As I was saying, both Oracle and Scribner are good-faith, fair-dealing cases that deal with company discretion. They don't have any real applicability here at all. And so the other question then is, the district court cited Hearst Communications, which is a contract interpretation case. In this respect, we note that the WorldCom case focused on Berg, which is a similar case. And it talked about how you look at the contract, the purpose of the contract, the subject matter as a whole, the party's conduct, the reasonableness of their interpretations. And so we would submit that, given that lens, that the district court's construction of the stock option agreements was overly narrow and formalistic. That is, the district court fundamentally agreed with Mr. Cadenia's view. Even though the stock option agreements were a function of employment, because they do not expressly refer to the duty of loyalty or honesty or probity or the code of conduct, Mr. Cadenia's misconduct is not a failure of consideration. We disagree. If one looks at the subject matter and the purpose of stock option agreements, we would submit Mr. Cadenia must comport himself with honesty, loyalty, probity, and that's consistent with his implied duties under both Mexican and Washington law. To hold otherwise is to immunize misconduct and unjustly enrich the employee. So I would frame it up as this. Where an employee receives employment-related compensation in the form of stock options, the stock option agreement incorporates the employee's common law duties of loyalty, honesty, probity, as well as any related employment code of conduct. If the employee then fails to comport with those obligations, it's a breach or it's a failure of consideration. We believe that's the proper way to look at law in this fact context. I think I've addressed the issues with respect to the claims that were dismissed and the Rule 15 standard, my view, would suggest the Court should have permitted the amendment. If there are any questions, I'm happy to answer it. I'd like to turn to the question of the District Court's denial of Mr. Cadena's motion for an award of fees under the Washington statute. You may want to watch your time. I'm eyeing it carefully, Your Honor. Thank you. This is short. The Washington statute is permissive. The language in the statute uses may, not shall. And to reverse, there has to be a finding of a clear abuse of discretion. Here, there's a mandatory forum provision in the stock option agreements. The District Court found that there was no abuse and no harassment of Mr. Cadena, that there was a proper basis to bring him to Washington, and the twin purposes of the statute were satisfied. In contrast, Mr. Cadena's argument for fees, notwithstanding the statute, is fundamentally an argument on the merits. His position is, effectively, that I won, therefore I should get the fees. And the District Court disagreed, and the Court's order and opinion, I think, are well-founded. We would ask the Court to reverse the District Court's order of dismissal and remand for further proceedings in the District Court, trial court, and to affirm the District Court's denial of Mr. Cadena's motion for fees. If you have no further questions, I'll stand down. Thank you, Counsel. Good morning. May it please the Court, Josh Harms for Mr. Cadena. The first notice of appearance I ever filed was on behalf of Mr. Cadena. That was about five years ago. Essentially, my entire career, Mr. Cadena has been paying my firm to bat away Expeditors Washington's claims against him, claims that failed for very basic reasons. Despite repeated dismissals, Expeditors Washington pushed largely unchanged theories in an attempt to litigate grievances related to Mr. Cadena's Mexican employment in a Washington court. Expeditors Washington concocted this dispute about Mr. Cadena's stock option agreements because those agreements have a forum selection clause, a jurisdictional hook for Expeditors Washington to use. But there's some irony in Expeditors Washington's reliance on the forum selection clauses. As the District Court explained, Expeditors Washington, quote, asked that the court look anywhere but the four corners of the contracts despite the agreement's inclusion of an integration clause, end quote. So despite asking for a judgment declaring the party's rights under the stock option agreements, Expeditors Washington is avoiding the actual language in the contracts because two of its most basic critical theories are not only extra textual, but they're contrary to the language of the integrated agreements. First, Expeditors Washington's position requires that it invoke common law duties applicable to a principal-agent relationship, and here that would be an employment relationship. But each of the stock option agreements expressly disclaims being an agreement for employment. And in fact, Expeditors Washington hasn't taken the position in this entire lawsuit, below or on appeal, that Mr. Cadena was in fact its agent. And that's not really surprising. Expeditors Washington doesn't want the employees of its 70-plus foreign subsidiaries to be its agents, among other things that would make it vicariously liable for all of those foreign employees' conduct. It seems that Expeditors Washington just wants to have its cake and eat it too. It forms subsidiaries to insulate itself from liability, but it wants to impute Washington common law duties on those employees of foreign subsidiaries when doing so would be to its benefit. I'm going to change the facts of the case a little bit. Yes. And we can push back against that in a minute. But let's assume that your client was simply employed by the Washington Corporation, so we're not dealing with this subsidiary issue. Right. He breaches the contract by basically stealing from his employer. The employer says, well, part of your employment compensation was stock options, and you've breached the contract, and you're not in a position now to enforce the contract on your behalf. Why should he be able to enforce the contract that he has himself breached, indeed flagrantly breached? Yes, Your Honor. Assuming all of those facts to be true, two reasons why Mr. Cadena in that situation would still be able to recover the stock options. The first is that the underlying contract, the stock option agreements, expressly disclaim that they're for employment. So these other cases... Wait a minute. The reality of this is this is part of the compensation under the contract. It is, and that's actually a nuanced issue that involves Mexican employment law. Mr. Cadena submitted the declaration of David Puente, who's a Mexican labor law expert, and he explained that under Mexican labor law, each employer has to enter a separate... It's called an individual employment agreement with each employee that sets out specifically the employee's salary and all the benefits of employment. And higher Mexican courts have held that those rules require that if a stock option agreement, or a stock option, rather, is not set out in that individual employment agreement, it can't be considered a part of the employee's salary or labor benefits. So technically, it's not within that package, but we do agree that it's incident to his... Well, it's clearly compensation for the work that he's performing. Yes, it is reliant on his ongoing... Sure, okay. Sure. The second issue in the hypothetical is the language. It's regarding the termination of stock options. Under the stock option plans, Mr. Cadena has an unconditional right to exercise vested options, quote, up to and until they terminate. And under each stock option agreement... Well, he has that right, but that does not say anything in there about what happens if you breach the employment contract, because this is compensation for the employment contract. He breaches, and now he says, and I want my full payment. I mean, I'm kind of being simple-minded here, but I'm having trouble getting away from the essential difficulty of the position of... I mean, this is the... He kills his parents, and now he wants mercy because he's an orphan. I mean, he breaches the contract, and he wants to enforce the contract. I don't get it. So, and, Your Honor, I think that it's important to consider two different contracts. There's the employment agreement, and that's between Mr. Cadena and Expeditors Mexico, a separate entity. And then there is essentially a commercial relationship that's incidental to the employment agreement, but it's not the employment agreement. And that's the commercial relationship. Now, that's fancy talk, but I'm having trouble getting away from the fact that the stock options are part of the compensation that he's agreed to under the contract. Right, and the stock options, they also provide that the right to exercise vested options that Mr. Cadena has acquired, it terminates upon his termination of employment, quote, for any reason, end quote. So the position that Expeditors Washington is taking is that Mr. Cadena can be fired for a cause. Yeah, but that language you just quoted, that's just as to timing as to when you exercise it. Yes, that's correct. It's not as to the right. That goes to the timing. It goes to the termination of the stock options. So once Mr. Cadena has acquired the vested stock options, once he has the right to exercise them, that right only terminates for one of three reasons, and one of those reasons is termination of employment for cause or without cause. But again, as I read that part of the record, that was with respect to timing, not just what the right was. I think that that's correct, Your Honor, that it's to timing. Counsel, let me follow up on Judge Fletcher's question. So your argument is that the right to exercise the stock option is already vested, so regardless of whether he stole from his employer, he has a right to immediately exercise that stock option, right? Am I following your argument so far?  Well, then, if that's the case, then wouldn't expeditors then have the option to sue him, essentially, to recover damages based on his breach of the duty of loyalty or breach of contract, whatever theories they can come up with? We're only at the motion-to-dismiss stage, and I don't know if ultimately any of these theories will play out, but it's certainly an argument, right? Well, I employed you, you stole from me, so even assuming you have the right to immediately exercise that stock option, I can still recover damages for breach of duty of loyalty, breach of contract, whatever they want to allege. Does that make sense? Yes, and I agree, and there's a reason why Expeditors Washington hasn't brought a breach of fiduciary duty claim, and that's because Mr. Cadena doesn't owe Expeditors Washington fiduciary duties. There's no principal-agent relationship between them. There's no employment relationship between them. Again, this is a separate— So you're saying that they can do that, they can bring the claims, but not here in federal court in Washington? Exactly. And you're also saying, I think, that they're going to lose. Didn't you just say that? Did you say he owes them no duty? Under Mexican law, if they were to bring this, there are duties under Mexican law of honesty and probity, and those duties, when they're violated, they can justify dismissal for cause, but those claims—apologies, a violation of those duties wouldn't support a separate civil claim for damages, much less a forfeiture of compensation under Mexican law. So Expeditors Mexico certainly could have brought those claims. It hasn't, and it hasn't brought those claims because— How could Expeditors Mexico have brought the claim because it's the parent company that is issuing the stock options? Right. And I suppose I was responding to Judge Wynn's comment about a separate claim other than the declaratory judgment claim. Well, I understand that, but you were just saying—  Sorry. Please go ahead. Sorry. No, I have one follow-up to that. He's consented to having the stock option issue litigated here in federal court in the state of Washington, correct? Yes. So I think there's a good argument that by doing that, any claims that sort of arise out of the same nucleus of facts could be tried here as well. What's your response to that? The form selection clause in the stock option agreements is limited to claims with respect to the stock options and the stock agreements. Right. I mean, with respect to, that's a pretty broad term, right? So it is very related in the sense that he's now exercising the stock option because it's vested, accepting your theory of the case, and now they're basically going to turn around and sue him for breach of the duty in exercise— for damages in exercising that stock option when he's basically failed to abide by the either employment relationship or whatever contractual obligations he had. And just a point of clarification, are we talking about a suit by Expeditors Washington or Expeditors Mexico? I'm talking about the counterclaims that they tried to, or the additional claims that they tried to include that the district court struck. Understood. So Expeditors Washington has brought several different claims in this case, essentially seeking damages for the alleged breach of fiduciary duty or however it is framed. Those have been rejected on personal jurisdiction grounds and for lack of standing. It has attempted to enforce the rights of Expeditors Mexico in Washington. So, for example, in the first complaint, its initial complaint, Expeditors Washington sought a declaratory judgment that Mr. Cadena had breached his employment duties with Expeditors Mexico and also sought a conversion claim, brought a conversion claim, seeking to recover the funds that Mr. Cadena allegedly took from Expeditors Mexico. So those claims were brought and they were dismissed without leave to amend because it doesn't have standing, among other reasons, to assert those claims, to assert those rights. That if Expeditors Washington or Expeditors Mexico wants to litigate those issues and seek damages in civil court, it should be doing so in a Mexican court, not in Washington, incidental to… If we were to turn this case around, I mean, it's a declaratory judgment, so turning the case around, I think, simply just rearranges it but to no serious consequence. If this were a suit by Mr. Cadena rather than a declaratory judgment suit brought by the Expeditors, say he sues for exercise of the stock options and he sues here in Washington State because that's where the Reform Selection Clause says he's supposed to be. Are you saying that it's impermissible for Expeditors to assert as a defense well, wait a minute, you're suing to enforce a contract that you yourself breached. Is that an impossible defense to bring? I think initially I would respond by saying that Mr. Cadena would sue the fidelity entities because the fidelity entities are the… They're just following instructions. Right, but they also operate the trust in which… I understand. So they're perfectly free to add them, but I'm assuming that they're suing Expeditors Washington. Right, and to answer Your Honor's question, Expeditors Washington still wouldn't be able to litigate a breach of contract claim because Mr. Cadena didn't breach this stock option agreement. This contract is not an employment agreement. He breached the employment agreement, obviously, and he's seeking to enforce part of his employment agreement. Your Honor, the employment agreement is separate. Wait a minute. We may be sort of parsing words. He's seeking the stock options that were guaranteed to him as part of his employment and part of his compensation for his employment. Isn't that right? They certainly were measured by his employment, but… They were conditioned upon his employment. The only reason he got them was because he was employed. Yes, and that's correct. So it's a contractual obligation that he has, and he's seeking to enforce the contractual obligation despite his having basically betrayed his employer. That is the allegation, Your Honor. Well, no, it's the fact. I mean, it's quite clear that he cheated. Isn't that right? I think that that's a very hotly contested fact. We have in the record his statement that I took this money and I'm going to try to pay it back. Your Honor, that was a statement that was translated to him, essentially. It's a second language where he was instructed to write it down. We also have in the record Mr. Cadena disclosing the 3% administrative fee to Expeditors Washington years ago, years before this came up. Counsel, do I understand that it's your position that the expeditors must honor the option agreement and basically give him money under that, but in response to a question Judge Wynn asked that they could later sue him for damages or recoupment? That's exactly correct, Your Honor. So the problem I have with that position, which I just want to put on the table, is this. I want to give you a full opportunity to respond. The problem that bothers me is if they basically give him more money by giving him the stock under those options or a buyout price, and then they have to sue him afterwards. I don't know what the expectation would be as to whether they could be able to collect money that they let out the door again. Because if, in fact, he's dishonest and embezzled or took other compensation he wasn't entitled to, then he may be able to figure out some complex way to get rid of money once he receives it, making him not subject to a suit for damages or recoupment. I understand that, Your Honor. The law provides for various remedies that Expeditors Washington could seek, such as a prejudgment writ of attachment or something in that nature that would secure monies, if that is a concern that they have and they can make the adequate showing here. That's what they attempted to do below. They contacted Wells Fargo and essentially orchestrated an interpleader with Mr. Cadena's personal savings with Wells Fargo. Those funds have since been dispersed. But the prejudgment writ of attachment would be what Expeditors Washington could seek to avoid that exact scenario. Because I do believe that Mr. Cadena, certainly under the stock option agreements, has a right to exercise the vested stock options that he owns. That is an existing right that can be exercised at any time. If Expeditors Washington or Expeditors Mexico wants to bring a separate claim seeking those civil damages, they're certainly free to, and there's various remedies that the law would provide, such as prejudgment writ of attachment, if that is something that they are concerned about. Okay. Thank you, counsel. Thank you. If the panel has no further questions, I will pass the podium. Thank you. Thank you. Very briefly in reply. Number one, Mr. Cadena's counsel has confirmed to this panel what I articulated, that his position is he gets the stock options, he gets the employment-related compensation regardless of misconduct. He wants to completely segregate those two, and our position is that's not permissible. Number two, Expeditors filed this lawsuit after Mr. Cadena sought to exercise. We did so in an effort to have the court help guide and instruct us as to what our obligations were under the stock option agreement. We could have issued those stock options and then sued him for breach of contract, but we felt that it was a more prospective act to get the court's guidance in the front end as opposed to unilaterally make a decision. Number two and three, Expeditors cannot litigate about the stock options anywhere but here. That's what the stock option agreements provide in the mandatory form provision. We don't have an option. Finally, with respect to the vesting issue, our position is that you are not vesting during the period of time in which you're engaging in misconduct. In other words, you're losing that right. Unless the court has any specific questions, I will sit down. I have no questions, Judge. Thank you. Thank you. Thank you, counsel.
judges: FLETCHER, GOULD, NGUYEN